IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAPITAL EAST PARTNERS, LLC et al., | |
| Plaintiffs, | CIVIL ACTION |
| v. | NO. 21-1298-KSM |
| WILMINGTON TRUST, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE BENEFIT OF THE HOLDERS OF COMM 2015-CCRE23 MORTGAGE TRUST COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, | |
| Defendant. | |

### MEMORANDUM

**MARSTON, J.** February 9, 2022

Plaintiffs Capital East Partners, LLC, Capitol East Partners II, LLC, and 1825 Maryland Associates, LLC (collectively, "Capital East" or the "Borrower") bring a breach of contract claim against Wilmington Trust, National Association, as Trustee for the Benefit of the Holders of COMM 2015-CCRE 23 Mortgage Trust Commercial Mortgage Pass-Through Certificates ("Wilmington Trust"). (Doc. No. 1-3.) Capital East initially filed suit in the Philadelphia Court of Common Pleas, alleging that Wilmington Trust breached a loan agreement between the parties by unreasonably refusing to allow Capital East to transfer a loan to a third party. (*Id.*) Wilmington Trust timely removed the case to this Court (Doc. No. 1). Presently before the Court is Wilmington Trust's Motion to Dismiss for failure to state a claim. (Doc. No. 5.) For the reasons below, Defendant's motion is granted.

## I.  BACKGROUND

Taking the allegations in the Complaint as true, the relevant facts are as follows.

### A.  *The Loan Agreement*

In 2015, Capital East entered into an agreement (the "Loan Agreement")[1] with Cantor Commercial Real Estate Lending, L.P. (the "Lender") for a loan in the amount of $21,500,000 (the "Loan").[2]  (Doc. No. 1-3 ¶ 1.)  Three properties that Capital East owned in Washington, D.C. served as collateral for the Loan (the "Properties").  (*Id.*)  The Loan Agreement acknowledges that the Lender relied on Capital East's ownership of the Properties "in agreeing to make the Loan," and continued to rely on Capital East's ownership of the Properties "as a means of maintaining the value of the Properties as security for repayment of the [Loan]."  (*Id.* at 79.)

To protect the Lender's interest in Capital East's continued ownership of the Properties, the Loan Agreement prohibits Capital East from transferring the Properties to a third party without the Lender's consent.  (*Id.* at 80.)  The Loan Agreement does, however, give Capital East "the right to unlimited Transfers of all of the Properties *(and not a portion thereof)*" with the Lender's reasonable consent if Capital East met certain conditions, including the following:

(i) The Borrower shall pay a transfer fee in the amount of 0.50% of the outstanding balance at the time of the transfer;

(ii) The Transferee shall have "the creditworthiness, reputation, and qualifications to the Lender's reasonable satisfaction";

(iii) The Transferee shall have an "aggregate net worth and

---

[1] The Loan Agreement is governed by the laws of the District of Columbia.  (Doc. No. 1-3 at 106.)

[2] Wilmington Trust is the trustee for the Loan.  (Doc. No. 1-3 ¶ 15.)

>     liquidity reasonably acceptable to the Lender";
>
> (iv)   There shall be no material litigation or regulatory action pending against the transferee; and
>
> (v)    The Transferee shall not have defaulted under its obligations with respect to any other indebtedness.

(*Id.* at 81–82.)  If Capital East were to transfer the Properties without the Lender's consent, it would be in defeasance and would have to replace the collateral (i.e., the Properties) with U.S. securities that generate enough income to meet the scheduled payments.  (*Id.* at 47.)

The Loan Agreement also limits Capital East's remedies against Wilmington Trust:

> In the event that a *claim or adjudication is made that Lender or its agents have acted unreasonably* . . . in any case where by law or under this Agreement or the other Loan Documents, Lender or such agent, as the case may be, has an obligation to act reasonably . . . , Borrower agrees that *neither Lender nor its agents shall be liable for any monetary damages*, and Borrower's sole remedies shall be limited to commencing an action seeking injunctive relief or declaratory relief.  Further, it is agreed Lender shall not be in default under this Agreement, or under any other Loan Document, unless a written notice specifically setting forth the claim of Borrower shall have been given to Lender within thirty (30) days after Borrower first had knowledge of the occurrence of the event which Borrower alleges gave rise to such a claim and Lender does not remedy or cure the default, if any there be, promptly thereafter.  *Failure to give such a notice shall constitute a waiver of such claim.*

(*Id.* at 109 (emphases added).)

### B.   *The Defeasance*

In 2017, Capital East sold "[t]he properties serving as collateral under the Loan Agreement" to 5533-518 9th Street NW Washington LLC ("Washington LLC")[3] and sought to

---

[3] Washington LLC is a Limited Liability Company registered in Delaware.  (Doc. No. 1 ¶ 25.)  Its sole member is Akelius US LLC ("Akelius US"), which is also a Limited Liability Company registered in Delaware.  (*Id.*)  Akelius US is the U.S. affiliate of Akelius Residential Property AB, a Swedish real estate conglomerate.  (*Id.* ¶ 29.)

transfer the Loan to Washington LLC, as well. (*Id.* ¶¶ 24, 26.) Capital East believed that Washington LLC was a satisfactory transferee under the terms of the Loan Agreement but claims that Wilmington Trust refused to transfer the Loan "on the basis that the buyer was affiliated with Akelius Residential Property AB" (a Swedish company) and "was therefore a 'foreign buyer.'"[4] (*Id.* ¶ 29.)

Even though Wilmington Trust refused to transfer the Loan, Capital East was bound to sell the Properties to Washington LLC. (*Id.* ¶ 24.) Because it was transferring the Properties that were serving as collateral on the Loan but not transferring the Loan, it was in defeasance and was required to pay "all accrued and unpaid interest," a "defeasance deposit," and all of the Lender's costs and expenses incurred in connection with the defeasance.[5] (*Id.* at 58–59.) In all, Capital East had to pay $3,266,139.00 in connection with the defeasance. (*Id.* ¶ 32.)

In July 2017, Capital East and Wilmington Trust entered into a defeasance agreement to "obtain the release" of the Properties (the "Defeasance Agreement"). (*See* Doc. No. 5-5.) The Defeasance Agreement included joint releases: Wilmington Trust released Capital East from "all claims, liabilities and obligations under the [Loan]" with limited exceptions, and Capital East released Wilmington Trust from

> all claims, causes of action and liabilities relating directly or indirectly to the [Loan] and the closing of the Defeasance . . . including any and all claims arising from or relating to negotiations, demands, requests or exercise of remedies in connection with the [Loan] and the closing of the Defeasance.

---

[4] Wilmington Trust disagrees and instead claims that it withheld consent because Capital East sought to transfer only two of the Properties and not "all of the Properties," as required by the Loan Agreement.

[5] The "defeasance deposit" is equal to the amount needed to purchase securities to substitute the Loan's original collateral, the Properties. (Doc. No. 1-3 at 34.)

4

(*Id.* at 6–7).

Although it entered into the Defeasance Agreement and released its claims against Wilmington Trust, Capital East filed suit, alleging that Wilmington Trust unreasonably refused to consent to the transfers in violation of the Loan Agreement. (Doc. No. 1-3.)

## II. ANALYSIS

### A. *Legal Standard*

#### 1. Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (quotation marks omitted). In reviewing a motion to dismiss, the court must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn from those allegations. *Id.* However, the court is not "compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (quotation marks omitted). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). "However an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *Id.* (cleaned up). Similarly, the Court "may consider an undisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White*

*Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

### 2. Breach of Contract

To prevail on a breach of contract claim, a plaintiff must show "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Francis v. Rehman*, 110 A.3d 615, 621 (D.C. 2015) (quoting *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2010)). However, to state a claim for breach of contract, a plaintiff need only "describe the terms of the alleged contract and the nature of the defendant's breach." *Id.* at 621.

"All contracts contain an implied covenant of good faith and fair dealing, which means that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Paul v. Howard Univ.*, 754 A.2d 297, 310 (D.C. 2000) (quoting *Hais v. Smith*, 547 A.2d 986, 987 (D.C. 1988)). A party may be liable for breach of the implied covenant of good faith and fair dealing if it "evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party." *Id.* "To state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege either bad faith or conduct that is arbitrary and capricious." *Wright v. Howard Univ.*, 60 A.3d 749, 754 (D.C. 2013) (citing *Alden v. Georgetown Univ.*, 734 A.2d 1003, 1112 n.11 (D.C. 1999)).

### *B.  Discussion*

Capital East claims that Wilmington Trust breached the terms of the Loan Agreement and violated the implied covenant of good faith and fair dealing by unreasonably refusing to allow Capital East to transfer the Loan to Washington LLC. (Doc. No. 1-3 ¶ 31.) Wilmington Trust argues that Capital East has failed to state a claim for breach of contract because the claim is

barred by the Loan Agreement's limitation of remedies provision. (Doc. No. 5 at 1.)

Section 10.12 of the Loan Agreement limits the remedies available to Capital East in the event that it seeks to bring a claim that Wilmington Trust has acted "unreasonably" in connection with its obligations under the Loan Agreement.[6] (Doc. No. 1-3 at 109.) If Capital East seeks to bring such a claim, it must provide Wilmington Trust with notice of the purportedly unreasonable behavior and give Wilmington Trust an opportunity to cure the alleged default. (*Id.*) "Failure to give such notice shall constitute a waiver of such claim." (*Id.*) And, even if Capital East provides notice and Wilmington Trust fails to remedy the alleged default, Wilmington Trust is not liable for any monetary damages—Capital East can only recover injunctive relief or declaratory judgment. (*Id.*) Wilmington Trust argues that Capital East waived its claim by failing to provide notice of its allegedly unreasonable behavior and that, in any event, this provision bars Capital East from seeking monetary damages. (Doc. No. 5 at 5–6.)

We agree with Wilmington Trust. Section 10.12 bars Capital East's claim. As a threshold matter, there is no dispute that Capital East failed to give the required notice. Further, Section 10.12 bars Capital East from seeking monetary damages where its claims arise out of Wilmington Trust's failure to act reasonably in connection with provisions of the Loan Agreement that require it to do so. (Doc. No. 1-3 at 109.) Here, Capital East seeks monetary damages from Wilmington Trust in connection with Wilmington Trust's allegedly unreasonable refusal to allow the loan transfer.[7] (*Id.* ¶¶ 16–17 ("Defendant was not to unreasonably withhold

---

[6] Capital East attached the Loan Agreement as an exhibit to the Complaint, so we may consider it at this stage. *See Delaware Nation v. Pennsylvania*, 446 F.3d 410, 413 n.2 (3d Cir. 2006) ("Courts may consider . . . exhibits attached to the complaint [in ruling on a motion to dismiss].").

[7] The Loan Agreement requires Wilmington Trust "not to . . . unreasonably withh[o]ld" consent to transfer the Loan to a third party. (Doc. No. 1-3 at 109.)

consent to transfer the loan . . . . Defendant breached the Loan Agreement by not allowing the loan to be transferred."); *id.* ¶ 18 ("Defendant also breached the implied covenant that it would act in good faith and deal fairly with Plaintiffs by refusing to honor Plaintiffs' reasonable expectation that it would be permitted to transfer the loan to a subsequent purchaser . . . .").) So its claim is plainly barred by Section 10.12.

Capital East argues that Section 10.12 is inapplicable because in *In re NNN 400 Capitol Center 16, LLC*, Case No. 16-12728(KG), 2018 WL 4849655 (D. Del Oct. 4, 2018), a Delaware bankruptcy court found that the same language did not release the plaintiff's claims where those claims were "not for unreasonable conduct but for intentional action on the part of the Defendants." (Doc. No. 13 at 10.) This argument is unavailing. In *In re NNN 400*, the plaintiff alleged that the defendant–lender repeatedly acted in bad faith to line its own pockets at the plaintiff's expense and tortiously interfered with other of the plaintiff's contractual relations. 2018 WL 4849655 at *3–8. The defendant, a lender, refused to provide a timely and accurate payoff statement, refused to approve new leases in a commercially reasonable timeframe, stigmatized the plaintiff's property so that no one would want to lease available space, and charged the plaintiff late payment fees even though it had not been late on any payments. *Id.* Moreover, the plaintiff in *In re NNN 400* brought more than just a breach of contract claim; it also brought negligence, tortious interference, aiding and abetting, declaratory judgment, and unjust enrichment claims.[8] 2018 WL 4849655 at *8.

In contrast, Capital East does not allege that Wilmington Trust repeatedly engaged in

---

[8] *In re NNN 400* is also distinguishable because the court was applying Arkansas law, *see* 2018 WL 4849655, at *8, but the Loan Agreement here is governed by the laws of the District of Columbia (Doc. No. 1-3 at 106).

8

bad-faith conduct; rather, it alleges that Wilmington Trust breached the Loan Agreement by "*unreasonably* refus[ing] to allow the loan transfer."  (Doc. No. 1-3 ¶ 6 (emphasis added).)  The District of Columbia Court of Appeals has made clear that, under D.C. law, contractual provisions barring claims arising out of a party's failure to act reasonably are valid and enforceable.  *See Moore v. Waller*, 930 A.2d 176, 180–82 (D.C. 2007) (holding that a release limiting liability arising out of the defendant's negligent, or unreasonable, behavior was enforceable).  The District of Columbia Court of Appeals has also declined to upset the "allocation of risk and responsibilities structured in private contractual agreements."  *See Presley v. Comm. Moving & Rigging, Inc.*, 25 A.3d 873, 891 (D.C. 2011).

Likewise, other federal courts presented with similar limitation of remedies provisions have agreed that the provisions bar claims for monetary damages arising out of a lender's alleged unreasonableness.  *See Cadle Co. II, Inc. v. Menchion*, 808 F. App'x 988, 995 (11th Cir. 2020) (affirming the district court's decision to enforce the limitation of remedies provision because the provision was "a reasonable allocation of risk known to the parties when entering into the Loan Sale Agreement"); *S. Fin. Grp., LLC v. McFarland State Bank*, 763 F.3d 735, 740–41 (7th Cir. 2014) (declining to "reject the parties' allocation of risk" and enforcing remedies limitation because there was no reason not to hold the parties "to the terms of their bargain; *Bear Creek Partners II, L.L.C. v. Deutsche Bank Tr. Co. Ams.*, No. 1:14-cv-309, 2016 WL 7626239, at *8 (W.D. Mich. May 6, 2016) (acknowledging that if the plaintiffs had continued to pursue their claims for money damages, those claims would be barred by "§ 10.12 ('Remedies of Borrower') of the Loan Agreement").

Because Capital East seeks monetary damages based on Wilmington Trust's allegedly unreasonable refusal to allow the transfer (and because Capital East never provided Wilmington

Trust with pre-suit notice of the alleged default), Section 10.12 bars Capital East's claim.[9]

Capital East requests that any dismissal be without prejudice so it could file an amended pleading. (Doc. No. 13 at 13.) "Leave to amend should be freely granted," *Wilson v. Hartford Cas. Co.*, 492 F. Supp. 3d 417, 429 (E.D. Pa. 2020) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1961)); however, "[l]eave to amend may be denied . . . if amendment would be futile," *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Here, amendment would be futile. Capital East's claim arises out of Wilmington Trust's allegedly unreasonable behavior, but Section 10.12 of the Loan Agreement clearly bars claims arising out of unreasonable behavior. Thus, the Court will dismiss Capital East's claims with prejudice. *See Dougherty v. Teva Pharm. USA*, Civil Action No. 05-CV-2336, 2008 WL 508011, at *9 (E.D. Pa. Feb. 20, 2008) (dismissing with prejudice claims the plaintiff had knowingly and voluntarily released).

## III. CONCLUSION

Capital East's claim is barred by Section 10.12 of the Loan Agreement. Accordingly, the Court grants Wilmington Trust's motion to dismiss with prejudice. An appropriate Order follows.

---

[9] Wilmington Trust also argues that Capital East's claim fails because Capital East released all claims against Wilmington Trust in the Defeasance Agreement and because Capital East failed to allege that it satisfied all of the conditions precedent to transfer the Loan. (Doc. No. 5 at 1.) However, the Court need not consider these arguments because Capital East's claim is barred by Section 10.12 of the Loan Agreement.